UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD NAPPIER, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 4:19-CV-410 SRW |
| RICHARD ADAMS,[1] | ) |
| Respondent(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Donald Nappier for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.    BACKGROUND**

In 2014, a jury convicted Petitioner of two counts of first-degree assault and two-counts of armed criminal action. The Circuit Court of Franklin County sentenced him to 17 years imprisonment. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed his convictions. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

---

[1] Petitioner is currently incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri. *See Missouri Dept. Corr. Offender Search*, http://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited March 26, 2021). Richard Adams is the Warden and proper party respondent. *See* 28 U.S.C. § 2254, Rule 2(a).

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's conviction as follows:

> Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. Nappier and his then-girlfriend, Hardcastle, had a two-year-old daughter together, and after having been evicted from their apartment, were living together in a camper with their daughter and Hardcastle's other daughter. On September 24, 2011, Hardcastle packed up her belongings and was planning to take her daughters to live with her parents the following day. That evening, however, Nappier, Hardcastle, and the girls drove to visit their friends, Tim and Barbara Briggs.
>
> At the Briggs' home, Nappier drank beer and whiskey and smoked marijuana and was described by witnesses as very drunk and belligerent. At one point, Nappier began verbally and physically abusing Hardcastle. Nappier was so intoxicated that Hardcastle decided that she and the children would spend the night at the Briggs' home and would not let Nappier drive their two-year-old daughter home, although she feared that he would likely try to do so. Later in the evening, however, Nappier took his daughter and headed outside toward his truck. Hardcastle grabbed the back of Nappier's shirt, but she was unable to stop him. Another man who was at the house stepped in front of Nappier to try to stop him but Nappier pushed him to the ground. Hardcastle and Tim and Barbara Briggs followed Nappier outside.
>
> When Nappier reached the truck, he placed the child in the car seat. Hardcastle went to the passenger side, removed the child from the truck, and handed her to Barbara Briggs, who took her inside the Briggs' home. Nappier became visibly angry and said, "I don't know who the [f**k] you people think you are." At this point, Tim Briggs and Hardcastle were standing in front of the truck, pleading for Nappier not to drive. Nappier then put the truck in drive, looked at Briggs, and drove forward, hitting Briggs and Hardcastle.
>
> Briggs was able to grab onto the truck's brush guard which prevented him from being completely run over. Hardcastle, on the other hand, was run over. In fact, Hardcastle was run over twice because after Nappier went forward over her, he put the truck in reverse and ran over her a second time.
>
> After seeing this, Briggs let go of the brush guard, ran over to the driver's side of the truck, reached in and put the truck in park, and then began punching Nappier in the face. Nappier exited the passenger side of the truck and began running. Briggs chased him down and continued to beat Nappier. Shortly thereafter, the police and ambulance arrived and took Nappier and Hardcastle to the hospital. Hardcastle suffered catastrophic injuries including partial paralysis and permanent disability that will require lifelong nursing care.

(ECF No. 11-5, at 2-3).[2]

## II.  STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context

---

[2] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. This Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

3

where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.   DISCUSSION

Petitioner asserts eight grounds for relief in his Petition: (1) the trial court erred in denying Petitioner's Motion for Judgment of Acquittal because there was no evidence he intended to cause serious injury to the victims; (2) he received ineffective assistance of counsel when his trial counsel did not present evidence the victim lived with Petitioner after the assault; (3) he received ineffective assistance of counsel when his trial counsel did not call and re-call witnesses to impeach the State's witnesses who perjured themselves; (4) the State secured convictions through the use of perjured testimony; (5) he received ineffective assistance of counsel when his trial counsel did not conduct an adequate investigation to refute perjured testimony; (6) the trial court denied Petitioner due process by not substantially complying with statutory provisions governing the selection of jurors; (7) he received ineffective assistance of counsel when his trial counsel did not investigate jury selection records; and (8) he received

ineffective assistance of counsel when his trial counsel did not interview and depose the State's witnesses prior to trial.

### A. Ground One – Sufficiency of the Evidence

In his first ground for relief, Petitioner argues the trial court erred in denying Petitioner's Motion for Judgment of Acquittal because the evidence at trial did not prove beyond a reasonable doubt that Petitioner knowingly attempted to cause serious injury to Tasha Hardcastle and Tim Briggs. Petitioner asserts he did not intentionally hit Ms. Hardcastle and Mr. Briggs with his truck, but was instead, attempting to flee and accidentally hit them.

For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319). This standard "gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

In habeas proceedings, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). A federal habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v.*

*Smith*, 565 U.S. 1, 2 (2011). Rather, a federal habeas court may overturn a state court decision on the sufficiency of the evidence only "if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico*, 559 U.S. at 773); *accord Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (A federal habeas court may grant relief if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality").

While the threshold of proof in this analysis "is purely a matter of federal law," a federal habeas court looks to state law for the substantive elements of the offense. *Johnson*, 566 U.S. at 655. Importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68. The Missouri Court of Appeals described the elements of first-degree assault as follows:

> "A person commits the offense of assault in the first degree if he or she attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." R.S.Mo. § 565.050 (2000). "Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony." *Id*. "[I]n order to be found guilty of first-degree assault for attempting to kill or attempting to cause serious physical injury, one must, with the purpose of committing that offense, take a substantial step toward committing it." *State v. Whalen*, 49 S.W.3d 181, 186 (Mo. banc 2001). "[A] defendant has to act purposefully as to the person defendant is charged with assaulting." *Id*. "To act *purposely* means that it is the actor's conscious object to engage in certain conduct or to cause a certain result, not that he or she act with malice." *Id*. at 187. "Thus, a person will be guilty of purposely causing or attempting to cause serious physical injury to another if the person consciously engages in conduct that causes such injury or it is his or her conscious object to cause such injury." *Id*.

(ECF No. 11-5, at 5).

A federal court's limited review of a state court's sufficiency of the evidence decision means that when a federal habeas court is "'faced with a record of historical facts that supports conflicting inferences [the court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must

6

defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). A federal habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). Additionally, the testimony of a victim or an eyewitness is sufficient to sustain a conviction. *See Tibbs v. Florida*, 457 U.S. 31, 45 n. 21 (1982) (noting that, "[i]f the jury believed [the eyewitness' testimony], the State's presentation was more than sufficient to satisfy due process"); *Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction."). In its review of Petitioner's sufficiency of the evidence claim, the Missouri Court of Appeals accepted as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregarded all evidence to the contrary. (ECF No. 11-5, at 4). The Court of Appeals found:

> First, as to Hardcastle, the evidence showed that Nappier was angry at Hardcastle and he had verbally and physically abused her. When Nappier tried to leave with their daughter, Hardcastle grabbed onto Nappier's shirt, but he dragged her behind him. After Nappier put their daughter in the truck, Hardcastle took her out and Nappier became angrier. Hardcastle stood in front of Nappier's truck and pleaded for Nappier not to leave, but he put the truck in drive and ran over her. Then he put the truck in reverse and ran over her again. As a result, Hardcastle was seriously injured. This was ample evidence for a reasonable juror to find Nappier guilty beyond a reasonable doubt for knowingly causing serious injury to Hardcastle. Point I is denied.
>
> As to Briggs, he followed Nappier out to his truck and also pleaded with Nappier to not drive, but Nappier looked directly at Briggs, said "I don't know who the [f**k] you people think you are," and proceeded to hit him with his truck. Briggs was able to grab onto the brush guard and was not seriously injured, but this evidence alone was sufficient for a reasonable juror to find Nappier guilty beyond a reasonable doubt of attempting to cause serious physical injury to Briggs. Nappier took a substantial step of attempting to cause serious physical injury when he purposefully drove at and hit Briggs.

(ECF No. 11-5, at 6).

The Court of Appeals correctly applied the standard of review articulated in *Jackson* and the record supports the factual findings cited by the court. Timothy Briggs, one of the two people

7

hit by Petitioner's truck, testified at trial. He stated Petitioner was drunk at the time of the incident. (ECF No. 11-1, at 186). Mrs. Briggs and Ms. Hardcastle also testified Petitioner was drunk and belligerent on that night. *Id*. at 234, 277-78. Mr. Briggs testified that after Petitioner put his child, Cheyenne, in the truck, Petitioner said to Mr. Briggs, who was trying to stop Petitioner from getting into the truck, "I don't know who the f**k you people think you are." *Id*. at 191. Tasha Hardcastle, Cheyenne's mother, removed Cheyenne from the truck and gave her to Barbara Briggs, Mr. Brigg's wife, who took her inside. At this point, Mr. Briggs and Ms. Hardcastle, were standing approximately five feet in front of the truck. *Id*. at 193. Mr. Briggs testified he heard the truck start and turned around. *Id*. Petitioner looked at Mr. Briggs who also made eye contact with Petitioner. *Id*. Then, Mr. Briggs stated, he felt the truck hit him and knock him down. *Id*.

Ms. Hardcastle, the other person who Petitioner ran over, testified Petitioner called her various names that night, like he usually does, such as "dumb b*tch," and "you stupid retard." *Id*. at 278. He also was pushing her around and spitting at her. *Id*. Ms. Hardcastle was standing in front of the truck, turned sideways, when all of a sudden, she was underneath the truck. *Id*. 282. Then, Petitioner proceeded to run over her a second time when he put the truck in reverse. *Id*. at 283. Viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found Petitioner consciously engaged in conduct that caused the injuries to Ms. Hardcastle and Mr. Briggs, or that it was his "conscious object to cause such injury." *Whalen*, 49 S.W.3d at 186-87. The Court of Appeals' decision there was sufficient evidence Petitioner intended to seriously injure Ms. Hardcastle and Mr. Briggs was not objectively unreasonable.

Petitioner argues he did not intend to hit either Mr. Briggs or Ms. Hardcastle, and that he was only attempting to flee after being attacked by Mr. Briggs. Petitioner presented this

8

argument through his testimony at trial. He stated he put Cheyenne in the truck, strapped her in, and then turned around, and Mr. Briggs started hitting him. (ECF No. 11-1, at 325-26). He could not remember starting the truck or moving it forward or backward, but he did remember it stopping. *Id*. at 329. He testified he did not intend to hurt anyone, he was in fear for his life, and trying to leave. *Id*. at 330, 336. Based on the verdict, the jury rejected Petitioner's version of events and chose to believe Mr. Briggs and Ms. Hardcastle over Petitioner. This Court's role is limited to overturning a jury's verdict only if the jury's finding of guilt "was so insupportable as to fall below the threshold of bare rationality." *Johnson*, 566 U.S. at 656. That situation is not presented in this case. The Court of Appeals' decision finding sufficient evidence was presented at trial to support the verdict is entitled to deference. The Court will deny the Petition on this ground.

    **B.**  **Ground Two – Ineffective Assistance of Counsel**

  In his second ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel did not present evidence that Petitioner lived with Ms. Hardcastle after the assault. Petitioner argues this evidence would have undermined Ms. Hardcastle's credibility and could have been used to impeach her.

  The Missouri Court of Appeals denied Petitioner's appeal of the denial of his PCR motion on this point. First, the Court of Appeals summarized the testimony provided at Petitioner's PCR evidentiary hearing. Petitioner testified he told his counsel his parents could corroborate that he lived with Ms. Hardcastle after the assault. He also testified he gave his counsel several pieces of mail he received at Ms. Hardcastle's address. (ECF No. 11-10, at 5). His parents testified Petitioner lived with them for the first six months after the assault and then he moved in with Ms. Hardcastle for eight months. *Id*. Petitioner's trial counsel testified he

9

attempted to establish Ms. Hardcastle and Petitioner lived together through Petitioner's testimony and cross-examination of Ms. Hardcastle. *Id*. He stated he did not want to call Petitioner's parents to the stand because he did not want to give the State the opportunity to introduce evidence Ms. Hardcastle needed someone to help her full-time due to the extent of her injuries. *Id*. at 6. He did not want to "detract from the fact that this was an accident" or get "too deep in the weeds on this." *Id*. The Court of Appeals held:

> The testimony from Movant's parents was not related to Movant's state of mind at the time of assault, but rather to Hardcastle's state of mind six months after the fact. We acknowledge the fact that Movant lived with Hardcastle after the incident may support an inference that Hardcastle did not believe Movant intended to harm her. However, an equally reasonable inference would be that Hardcastle believed Defendant was sorry and would not harm her again. Either way, Hardcastle's state of mind and belief six months after the fact does not directly negate any element of the crime. Only Movant's mental state is relevant, and any inference regarding Movant's state of mind at the time of the assault based on Hardcastle's state of mind six months later is purely speculative. We find this is insufficient to satisfy Movant'[s] burden of establishing that the witness's testimony would have produced a viable defense.
>
> . . . .
>
> Movant's parents testified during the evidentiary hearing they had no first-hand knowledge of the incident. They stated that Movant lived with them for the first six months after the incident, and with Hardcastle after that. This testimony would not have significantly undermined Hardcastle's credibility because it was consistent with her testimony at trial. Both Hardcastle and Movant's parents testified that Movant did not live with Hardcastle for six months following the incident. Therefore, it was not inconsistent for Hardcastle to deny, under cross-examination, trial counsel's assertion that she "lived with [Movant] for eight to nine months after the accident."
>
> Moreover, we find trial counsel's decision not to "get into the weeds" regarding whether Movant lived with Hardcastle after the assault was a reasonable choice of trial strategy. Trial counsel was reasonably concerned that introducing this evidence would allow the State to introduce evidence that the reason Movant was living with Hardcastle was because her injuries were still so extensive that she needed someone to help her full-time, and that individual was Movant. This would have been incredibly damaging testimony if heard by the jury. Therefore, trial counsel's decision not to call Movant's parents or present other evidence to impeach Hardcastle's testimony was a reasonable choice of trial strategy under the circumstances of this case.

> . . . Trial counsel was not ineffective for failing to call two witnesses as they would not have provided Movant with a viable defense, and deciding not to focus on Movant living with Hardcastle after the assault was a reasonable choice of trial strategy because it avoided opening the door for the State to introduce potentially damaging evidence. Point denied.

(ECF No. 11-10, at 5-8) (internal citations omitted).

The Court of Appeals' decision is entitled to deference. In order to prevail on an ineffective-assistance-of-counsel-claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): (1) he must show that counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Petitioner has not established his counsel's performance was deficient or that he was prejudiced by his counsel's allegedly deficient performance.

Petitioner faces a high burden in establishing his counsel was ineffective for failing to call his parents as witnesses. "A defense counsel's decision not to call a witness is a virtually unchallengeable decision of trial strategy." *Jackson v. United States*, 956 F.3d 1001, 1007 (8th Cir. 2020). Petitioner's counsel had a sound reason for not calling Petitioner's parents – he did not want to open the door to admitting further damaging testimony of Ms. Hardcastle's injuries to establish why Ms. Hardcastle allowed Petitioner to live with her. This is an objectively reasonable decision based on sound trial strategy.

Furthermore, Petitioner has not shown admittance of his parents' testimony, or the pieces of mail with Ms. Hardcastle's address on them, would have affected the credibility of Ms. Hardcastle. Trial counsel cross-examined Ms. Hardcastle on the issue of Petitioner staying with her at some point after the incident:

>   **Q**  So we go full circle, and the answer to that question is that he actually did stay with you after the accident?
>
>   **A**  I'm going to say to be honest, though –
>
>   **Q**  We want you to be honest.
>
>   **A**  I would have to say yes, yes.

(ECF No. 11-1, at 300-301). Neither his parents' proposed testimony, nor Ms. Hardcastle's actual testimony, negated any of her testimony about the essential facts of the case – Petitioner running her over with a truck and his intent to do so. The proposed testimony concerns events well after the fact and has no bearing on what occurred the night of the assault. Finally, Ms. Hardcastle's testimony of the assault was supported by the testimony of Mr. and Mrs. Briggs. For these reasons, Petitioner has not met the two-prong *Strickland* test.

The Court of Appeals' decision which found Petitioner's counsel was not ineffective and that Petitioner failed to establish he was prejudiced by his counsel's decisions, is entitled to deference as it is not an unreasonable application of federal law or an unreasonable determination of the facts. The Court will deny the Petition on this ground.

### C. Grounds Three through Eight

In grounds three through eight, Petitioner asserts various ineffective assistance of counsel claims, a claim the State secured his conviction through perjured testimony, and a claim the trial court denied due process to Petitioner by not substantially complying with statutory provisions for the selection of jurors. Petitioner did not raise these claims in his amended PCR motion or in his appeal of his PCR motion. Therefore, the claims are procedurally defaulted.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate

review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan,* 526 U.S. at 848)). Petitioner argues he raised these claims in his *pro se* PCR motion. However, under Missouri case law, the amended PCR motion supersedes the *pro se* PCR motion, and any claims not raised in the amended PCR motion are no longer before the motion court. *King v. Wallace*, No. 4:13-CV-199 ACL, 2016 WL 827931 at *4 (E.D. Mo. Mar. 3, 2016) (citing *Tinsley v. State*, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008)). Thus, claims raised in a *pro se* PCR motion and not in an amended PCR motion are procedurally defaulted. *Id*.

A petitioner under § 2254 may avoid procedural default only by showing there was cause for the default and resulting prejudice, or a miscarriage of justice would result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, a petitioner must show "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner argues the procedural default of his claims should be excused because his PCR counsel was ineffective for failing to raise the claims.

In *Coleman v. Thompson*, the Supreme Court established the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default. 501 U.S. 722, 753-75 (1991). In *Martinez v. Ryan*, the Supreme Court recognized a narrow exception to this rule: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective." 566 U.S. 1, 17 (2012). The Supreme Court

13

also noted that a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

First, the Court notes the *Martinez* exception can only be applied to excuse the procedural default of ineffective assistance of counsel claims. Therefore, Petitioner's claims the State procured his conviction through the use of perjured testimony and the trial court denied Petitioner due process remain procedurally defaulted. Second, Petitioner can only excuse the procedural default of his ineffective assistance of counsel claims if he can show those claims are substantial, or that they have some merit.

Petitioner claims his trial counsel was ineffective because counsel did not conduct an adequate investigation so as to refute perjured testimony, his counsel did not call or re-call witnesses to impeach witnesses who perjured themselves, his counsel did not investigate jury selection records, and his counsel did not interview and depose Ms. Hardcastle before trial. After a thorough review of Petitioner's arguments, the Court finds he has failed to establish his claims have merit because he has not shown he was prejudiced by any of his counsel's alleged deficiencies. Therefore, Petitioner has not shown cause and prejudice for his procedural default, and the Court must dismiss these claims.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Donald Nappier for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Donald Nappier's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a

14

constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

    So Ordered this 29th day of March.

                                  */s/ Stephen R. Welby*
                                  **STEPHEN R. WELBY**
                                  **UNITED STATES MAGISTRATE JUDGE**